FIFTH DIVISION

June 25, 2005

No. 1-04-0625

RICHARD LANGE,

Plaintiff-Appellant,

v.

FISHER REAL ESTATE DEVELOPMENT CORPORATION, an Illinois Corporation, and MIDWEST CARPENTRY, INC.,

Defendants-Appellees.

)))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Diane Larsen and

Honorable

David Lichtenstein,

Judges Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Richard Lange, appeals from the trial court's grant of summary judgment in favor of defendants Fisher Real Estate Development Corporation (Fisher) and Midwest Carpentry, Inc. (Midwest) (collectively defendants).  We affirm.

FACTUAL BACKGROUND

The facts are not in dispute.  This personal injury case arose out of an incident that occurred in the early morning hours of April 6, 2000, when plaintiff was injured on Fisher's property.  Defendant Fisher is a company engaged primarily in the business of construction.  At the time of the incident in question here, Fisher was the general contractor of a six-flat condominium construction project in Lincoln Park, Chicago, that was still in the process of being built.  Midwest Carpentry did the carpentry for this project.

 Plaintiff, a taxi cab driver, had been in the process of dropping off a female passenger when she decided to “skip-out” without paying the fare.  Plaintiff testified in his deposition that he did not call the police because “she would have been long gone before the police ever got there.”  Plaintiff chased the woman down an alley because he “wanted to catch her.”  Still under the cover of darkness, plaintiff followed the woman into the construction site owned by Fisher.  He knew it was a construction site because he saw mounds of dirt piled a few feet high, construction fencing, construction equipment, a port-o-potty and construction supplies on the jobsite.  The fencing on the construction site was strewn on the sides of the dirt mounds.

As plaintiff chased the woman, he saw her run into a doorway of a building that was under construction, and then disappear.  He continued his chase.  Plaintiff entered through an open doorway.  In order to reach this doorway, plaintiff had to dodge broken boards, bricks and mud.  As he entered, he saw that the walls on both sides were completed, but the front of the building was only covered with a sheet of plastic.

There were no lights on inside the doorway, but the area was partially illuminated by the streetlights.  The light was sufficient for him to see the floor, and he was able to tell that there was nothing on the floor.  The woman was not in this room and plaintiff “surmised that she had cut through” to get back out of the building.  He noted that there was a hallway to his right.  Plaintiff could see that the hallway led to another room.  The wall to the second room was visible on the other side of the hallway, but the hallway itself was dark. Plaintiff testified that the wall was 20 or more feet from the opening of the doorway, and he estimated that the length of the hallway was five to seven feet.

Plaintiff decided to enter the hallway.  Unfortunately, the hallway had no floor.  Plaintiff took one step into the hallway and fell approximately 10 feet, landing on a pile of construction materials.  He sustained a shattered femur, bruises and contusions.

PROCEDURAL BACKGROUND

Plaintiff filed suit against defendants in December 2000.  His original complaint alleged negligence.  Defendants were granted summary judgment.  Plaintiff subsequently filed an amended complaint alleging willful and wanton misconduct by both defendants.  Defendants again filed a motion for summary judgment.  In their motion, defendants argued that, even according to plaintiff's own testimony, the hole into which the plaintiff fell was not a hidden or concealed defect.  They contended that, under Illinois law, the subject hole was an open and obvious condition and, therefore, defendants had no duty to warn the plaintiff of the open and obvious condition.  Furthermore, defendants noted that an open and obvious hole concealed by darkness, under Illinois law, does not lose its open and obvious character.  The trial court made no ruling but, instead, granted plaintiff leave to file a second amended complaint alleging that defendants had a duty under a voluntary undertaking theory.

Plaintiff filed a two-count second amended complaint.  Count I alleged willful and wanton misconduct; count II alleged that defendants had assumed a duty under a voluntary undertaking theory.  On February 17, 2004, the trial court entered summary judgment in favor of both defendants.  Plaintiff now appeals.

ANALYSIS

We review 
de novo 
a grant of summary judgment.
 Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).  The issue before us is whether defendants owed a duty to plaintiff.  Whether a duty exists is a question of law for the court to determine.  
Rhodes v. Illinois Central Gulf R.R.
, 172 Ill. 2d 213, 227, 665 N.E.2d 1260 (1996); 
Salazar v. Crown Enterprises, Inc.
,
 
 328 Ill. App. 3d 735, 740, 767 N.E.2d 366, 371 (2002).  A landowner's duty to an individual on the landowner's premises depends upon that individual's status. 
Rhodes
, 172 Ill. 2d at 227-28, 665 N.E.2d 1260, 1267-68; 
Salazar
, 328 Ill. App. 3d at 740, 767 N.E.2d at 371.  The status of  “trespasser” belongs to one who enters upon another's land for his or her own purposes without permission, invitation, or right.
 Helms v. Chicago Park District
, 258 Ill. App. 3d 675, 630 N.E.2d 1016 (1994).  Plaintiff was a trespasser.

The limited duty owed to a trespasser by a landowner is well established in Illinois. 
Miller v. General Motors Corp
., 207 Ill. App. 3d 148, 158, 565 N.E.2d 687, 692 (1990).  “Generally, under Illinois law, a landowner owes no duty of care to a trespassing adult except to refrain from willfully and wantonly injuring him. 
Rhodes
, 172 Ill. 2d at 229, 665 N.E.2d at 1268; 
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 660 N.E.2d 863 (1995); 
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 446, 605 N.E.2d 493, 498 (1992).  The law does not require a landowner to assume that a trespasser will expose himself to injury on the landowner's property. 
Miller v. General Motors Corp.
, 207 Ill. App. 3d 148, 158, 565 N.E.2d 687, 692 (1990).  In addition, a landowner is not required to keep his land in any particular state or condition to promote the safety of trespassers.
 Miller
, 207 Ill. App. 3d at 158, 565 N.E.2d at 692.  Nevertheless, exceptions to the general rule limiting a landowner's duty of care to a trespasser have been created. 
Rhodes
, 172 Ill. 2d at 229, 665 N.E.2d at 1268.  One of these exceptions that has been recognized by Illinois courts is the private necessity privilege found in section 345 of the Restatement (Second) of Torts (1965). See 
Benamon v. Soo Line R.R. Co.
, 294 Ill. App. 3d 85, 689 N.E.2d 366 (1997); 
West v. Faurbo
, 66 Ill. App. 3d 815, 384 N.E.2d 457 (1978).

Section 345 states as follows:

“(1) Except as stated in Subsection (2), the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee.

(2) The liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held open to the public, is the same as the liability to an invitee.” Restatement (Second) of Torts §345 (1965).

The relevant subsection here is 345(1).

Comment 
a
 to section 345 of the Restatement further explains as follows:

“One may be privileged to enter land in the possession of another without the possessor's consent for the purpose of advancing or protecting his own interests or those of the public, as where he enters on the one hand to take possession of his boat wrecked upon the possessor's foreshore, or on the other, in pursuit of a felon. 
As to the circumstances under which such a privilege exists, see §§ 191-211
.” (Emphasis added.) Restatement (Second) of Torts §345, Comment 
a
, at 227 (1965).

Here, the relevant section is section 197(1) of the Restatement, which provides as follows: “[o]ne is privileged to enter or remain on land in the possession of another if it is or reasonably appears to be necessary to prevent serious harm to ***  the actor, or his land or chattels.” Restatement (Second) of Torts §197(1) (1965).

Section 345 was implicitly adopted by this court in 
West v. Faurbo
, 66 Ill. App. 3d 815, 384 N.E.2d 457 (1978).   In that case, a minor swerved onto a defendant's land to avoid hitting a motor vehicle.  In so doing, he was injured when he struck a concrete block that lined the defendant's driveway.  The 
West
 court disagreed with the lower court's finding that plaintiff was a trespasser. 
West
, 66 Ill. App. 3d at 817, 384 N.E.2d at 458.  The 
West
 court stated:

“A trespasser 'is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.' (Restatement (Second) of Torts, §329 (1965).) One such privilege is that of private necessity where the entry is for the purpose of advancing or protecting one's own interests. (Restatement (Second) of Torts §329, Comment
 a
 (1965).) One who enters pursuant to a privilege of private necessity enjoys the status of a 
licensee
. Restatement (Second) of Torts §345 (1965). [Citation.]” (Emphasis added.) 
West
, 66 Ill. App. 3d at 817-18, 384 N.E.2d at 458.

Plaintiff now argues that the private necessity privilege applies.  He further asserts that because the distinction between a licensee and an invitee no longer exists under Illinois law, his status was that of an invitee to which the defendants owed him a duty to refrain from ordinary negligence.  We disagree with both of plaintiff's assertions.

In 1997, this court had an opportunity to examine the application of the private necessity privilege as it relates to trespassers. 
Benamon v. Soo Line R.R. Co
., 294 Ill. App. 3d 85, 689 N.E.2d 366 (1997).  

In 
Benamon
, the minor plaintiff believed that a gang of boys might be trying to steal his jacket.  He testified in his deposition that he ran up a railway incline and onto the tracks to hide because he was scared and wanted to do “ 'anything to try to get away.' ” 
Benamon
, 294 Ill. App. 3d at 88, 689 N.E.2d 369.  After the gang was gone, the minor plaintiff caught his foot in the tracks as he was attempting to leave and it was partially amputated by a passing freight train. 
Benamon
, 294 Ill. App. 3d at 88, 689 N.E.2d 369.

The minor plaintiff's mother in 
Benamon
 filed suit against the railroad companies, which eventually filed a motion for summary judgment asserting that plaintiff was a trespasser.  Plaintiff argued that the minor was “forced to go up the incline and onto the overpass for safety reasons and to protect his well-being.” 
Benamon
, 294 Ill. App. 3d at 90, 689 N.E.2d at 370.  Thus, she contended that he was privileged to be on defendants' property due to the existence of a private necessity and, therefore, the defendants owed him the higher duty of reasonable care.  The court rejected both contentions.

First, the 
Benamon
 court addressed the applicability of the private necessity privilege to the facts of the case before it.  T
he court decided that “where [a] trespasser enters the property of another pursuant to the privilege of private necessity, that is, for the purpose of advancing or protecting his own interests[,] the property owner owes a duty of 
reasonable care under the circumstances
. [Citations.]” 
Benamon
, 294 Ill. App. 3d at 89-90, 689 N.E.2d at 370.  As the 
Benamon
 court explained:

“The private necessity privilege allows one to enter the premises of another without permission 
in an emergency situation when such entry is reasonably necessary to avoid serious harm
. [Citation.]  However, * * * 'the privilege must be exercised at a reasonable time and in a reasonable manner' and in light of all of the circumstances. [Citation.]” (Emphasis added.) 
Benamon
, 294 Ill. App. 3d at 90, 689 N.E.2d at 370.

As the court also explained, even if it were to agree that the plaintiff's belief in the threat of bodily harm was reasonable, it did not agree that the action he took to avoid that threat was reasonable. The court noted the hazards posed by oncoming railroad trains, namely, the serious threat of harm to persons on or near the tracks. The court noted that the plaintiff had testified that it was dangerous to be on the tracks and that children could get killed playing up there.  The court further noted that the plaintiff “had other, safer, options available to him.  Those options included running home, running to a nearby house, or running back to the grammar school where he had watched a basketball game.” 
Benamon,
 294 Ill. App. 3d at 90, 689 N.E.2d at 370.  The court ultimately concluded that the plaintiff's decision to run up the embankment was not a “private necessity” entitling him to a higher standard of care than that normally owed to trespassers. 
Benamon,
 294 Ill. App. 3d at 91, 689 N.E.2d at 371. 

The private necessity privilege does not apply in the instant case.  Here, plaintiff testified that he was not threatened by his passenger.  Nonetheless, without any threat toward him, plaintiff decided to pursue the “fleeing fare,” which plaintiff testified was approximately $6.  As noted earlier, plaintiff chased the woman in the dark, down an alley, and had to climb mounds of construction debris and dirt before he was able to gain access to the construction site.  Applying the reasoning of the 
Benamon
 court to the instant case, we conclude that the private necessity exception is inapplicable.

Not only does the holding of 
Benamon
 require that an emergency situation present itself  before the private necessity exception be considered, but there must also be no other options available that are less safe.  Plaintiff could have called the police.  Plaintiff asserts that the cab passenger would have been long gone before any policeman could get to the scene.  He further contends that, “[i]n some alternative universe, a call to the police about a $6 cab fare might lead to a massive and immediate deployment of police resources.”  He argues that the evidence here suggests that “a call to the police in this case would also be an abandonment of [plaintiff's] property rights.”  The trial court described plaintiff's decision to chase the woman as “an act of vigilantism.”  We conclude that plaintiff's actions were not reasonable under the circumstances.

We further believe that a landowner does not 
automatically
 owe the higher duty of ordinary care to every trespasser who enters land pursuant to a private necessity.  As to the contention that defendants owe trespassers who enter land under the private necessity exception the higher duty of reasonable care, the 
Benamon
 court explained:

“[E]ven if [the minor plaintiff's] presence upon the defendants' property was of private necessity, * * * we would question [the] further contention that the defendants owed him a duty of reasonable care.  At the time 
West v. Faurbo
, 66 Ill. App. 3d 815, 384 N.E.2d 457 (1978), was decided, Illinois determined premises liability issues on the basis of the status distinctions of invitee, licensee and trespasser as set forth in [sections 328E to 350 of] the Restatement (Second) of Torts [citation].  Thus, the court in 
West
 applied the private necessity exception set forth in section 345 of the Restatement (Second) of Torts so as to treat the trespasser as a licensee.  In that regard, the court held that the defendants owed the plaintiff a duty to refrain from injury by willful and wanton misconduct; to exercise reasonable care in his 'active operations'; and to warn of known hidden or latent dangers.

Approximately six years after 
West
 was decided, the Illinois legislature adopted the Illinois Premises Liability Act (740 ILCS 130/1 
et seq
. (West 1992)) .  As discussed above, that Act abolished the common law distinctions of invitee and licensee providing, instead, that the duty owed to entrants is that of 'reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them.' [Citation.]  One could argue, as the plaintiff does, that a trespasser who enters the property of another under private necessity, considered to be a licensee, is now entitled to the greater protection of reasonable care since there is no longer a distinction between licensees and invitees.  We would disagree with such an argument.  We believe that the abolishment of the licensee/invitee distinction in Illinois would not heighten the duties owed by a possessor of land to a person who enters his land under private necessity.  There can be no logical reason to afford a greater protection of reasonable care to such a person, who, in actuality, is a trespasser and who enters the property without the possessor's permission and without benefit to the possessor.  Thus, we would hold that had [the minor plaintiff] satisfied the private necessity exception, the defendants would have owed him the duties applicable to licensees, such as to warn of any latent defects in the track configurations.” 
Benamon
, 294 Ill. App. 3d at 91-92, 689 N.E.2d at 371-72.

Although 
dicta
, we find this reasoning applicable to the instant case.

We additionally note, however, that Comment 
d
 to section 345 of the Restatement explains:

“The rule stated in Subsection (1) requires the possessor to warn the visitor of dangerous conditions on the land which the visitor 
may be expected not to discover or not to appreciate
.  The basis of this duty to a 
licensee
 is the permission given him to enter the land, and the likelihood that he will be endangered when he enters 
in ignorance of the dangerous condition 
and encounters it.  In order for the possessor to be liable under the rule stated in this Section for failure to warn a person who enters under a privilege arising without the possessor's consent, there must be a similar likelihood that ignorance of the condition will endanger the safety of the visitor.  Therefore 
the possessor must know or have reason to anticipate that the visitor is upon the land, or will enter it in the exercise of his privilege, and that he will be endangered by the condition
.” (Emphasis added.) Restatement (Second) of Torts §345, Comment 
a
 at 228 (1965).

In any event, plaintiff did not have a privilege of private necessity to enter this construction site.  Thus, he was a trespasser.

Even assuming, 
arguendo
, that, as a result of the private necessity privilege, plaintiff was an invitee to whom defendants owed a duty of ordinary care, defendants would not be liable to plaintiff in the present case.  Under Illinois law, landowners are generally under no duty to protect 
invitees
 from open and obvious perils. 
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435, 448-49, 665 N.E.2d 826, 832-33 (1996); see also 
Corcoran v. Village of Libertyville
, 73 Ill. 2d 316, 329 (1978) (even where defendants owe a duty of ordinary care to a plaintiff, a landowner “will not be liable, 
even to invitees
, for harm resulting from conditions which would prompt no anticipation of an unreasonable risk of such harm”)
. Contrary to plaintiff's contention, the open and obvious nature of a danger 
is
 relevant to the duty of the possessor of land.  See 
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435, 447, 665 N.E.2d 826, 832, (1996) (“[W]e once more affirm the continued viability of the open and obvious doctrine in the analysis of a landowner's duty to persons injured while on the landowner's property. The existence of a defendant's legal duty is separate and distinct from the issue of a plaintiff's contributory negligence and the parties' comparative fault.”).

As the 
Bucheleres
 court explained: “In cases involving obvious and common conditions, such as fire, 
height
, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition. The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks.” (Emphasis added.) 
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435, 448, 665 N.E.2d 826, 832 (1996).  Here, the hole through which plaintiff fell was an open and obvious condition. See, 
e.g.
,
 Miller v. Archer-Daniels-Midland Co.
, 261 Ill. App. 3d 872, 634 N.E.2d 1108 (1994) (owner had no duty to protect employee from open and obvious condition of man-lift opening in the fifth-floor deck of a construction project); 
Briones v. Mobil Oil Corp.
, 150 Ill. App. 3d 41, 501 N.E.2d 41 (1986) (owner had no duty to warn of hole in floor at demolition site); see also 
Jakubowski v. Alden-Bennett Construction Co.
,
 
 327 Ill. App. 3d 627, 636, 763 N.E.2d 790, 797 (2002) (open stairwell on construction site presented an open and obvious danger of falling).
  Indeed, our supreme court has noted that, even in the case of children, falling is recognized as an obvious risk that is capable of being appreciated. See 
Logan v. Old Enterprise Farms, Ltd.
, 139 Ill. 2d 229, 240, 564 N.E.2d 778, 783 (1990) (and cases cited therein). 

Moreover, as 
Midwest
 notes, in discussing the duties owed by a possessor of land to an invitee/licensee, this court has stated that it is not wilful and wanton misconduct for a landowner to fail to warn a licensee of a dangerous condition concealed only by darkness because such a danger is not considered hidden.
 O'Donnell v. Electro-Motive Division of the General Motors Corp.
, 148 Ill. App. 3d 627, 499 N.E.2d 608 (1986).  Because the only duty on the part of defendants here was to refrain from willfully and wantonly injuring plaintiff –  a trespasser –  defendants had no duty to warn plaintiff of the open and obvious hole.

We further disagree with plaintiff's contention that 
Ward v. K mart Corp
., 136 Ill. 2d 132, 554 N.E.2d 223 (1990), applies here. In 
Ward
, the plaintiff was carrying a large mirror that he had just purchased in the store and was injured when he walked into a five-foot-tall post near the door through which he was exiting the store. 
Ward
, 136 Ill.2d at 135, 554 N.E.2d 223.  The 
Ward
 court concluded that the “open and obvious rule” was not a 
per se 
rule. 
Ward
, 136 Ill. 2d at 147, 554 N.E.2d at 230. 
Ward
 adopted section 343A of the Restatement (Second) of Torts (Restatement (Second) of Torts §343A (1965)) and the "forgetfulness or distraction" exception to the general rule of no liability for open and obvious conditions.  As the 
Ward 
court stated: “We conclude that to the extent that the rule may have held that the duty of reasonable care owed by an owner or occupier 
to those lawfully on his premises 
does not under any circumstances extend to conditions which are known or obvious to such entrants, that rule is not the law in this State.” (Emphasis added.) 
Ward
, 136 Ill. 2d at 145, 554 N.E.2d at 229.  Plaintiff here, however, was a trespasser.

Moreover, the 
Ward
 court, in deciding that the defendant there had a duty to warn of or remedy the open and obvious condition, focused on whether "the defendant should reasonably anticipate injury to those entrants on his premises who are 
generally exercising reasonable care for their own safety
, but who may reasonably be expected to be distracted *** or forgetful of the condition after having momentarily encountered it." (Emphasis added.) 
Ward
, 136 Ill. 2d at 152, 554 N.E.2d 223.

We decline plaintiff's invitation to extend 
Ward
 to the facts of the present case.  Defendants had no reason to anticipate that a plaintiff would trespass onto the premises.  Moreover, it cannot be said that persons who trespass onto a construction site in darkness are  
“
generally exercising reasonable care for their own safety.”  We have already concluded that plaintiff's actions were not reasonable under the circumstances.

Plaintiff next contends, however, that defendants are liable under the voluntary undertaking doctrine.  He argues that the trial court should not have granted summary judgment because defendants, Midwest and Fisher, voluntarily undertook a duty.  Specifically, plaintiff asserts that they voluntarily undertook to fence off the entire construction site and to block the entrances to drop-offs within the jobsite.  Plaintiff testified that, at the time of his accident, he saw the fencing lying around the construction site injury.  Also, there were no barricades in front of the door opening where plaintiff fell.

Like other issues of duty, whether a defendant has voluntarily undertaken a duty to a plaintiff is a question of law for the court that is properly addressed in a motion for summary judgment. 
Jakubowski v. Alden-Bennett Construction Co.
, 327 Ill. App. 3d 627, 639, 763 N.E.2d 790, 799 (2002).  Under the voluntary undertaking theory of liability, the duty of care to be imposed on a defendant is limited to the extent of the undertaking. 
Jakubowski
, 327 Ill. App. 3d at 639, 763 N.E.2d at 799.

Section 324A of the Restatement (Second) of Torts provides as follows: 

“Liability to Third Person for Negligent Performance of Undertaking 

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if 

(a) his failure to exercise reasonable care increases the risk of such harm, or 

(b) he has undertaken to perform a duty owed by the other to the third person, or 

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A (1965).

Plaintiff relies on subsections (a) and (c).  With respect to subsection (a), plaintiff has failed to show how any failure on the part of defendants 
increased
 the risk of the harm of the open and obvious condition.  With respect to subsection (c), plaintiff has not shown that he relied on any undertaking.

Fisher provided fencing used to block access to the construction site at night.  The purpose was to keep the public out.  It was the responsibility of contractors working on the site to make sure that the fencing was put up at the end of the day.  Nevertheless, “[w]here a duty of care is imposed by reason of a voluntary undertaking, breach of that duty can be found only where there is misfeasance rather than nonfeasance” by the defendant.  “ 'Misfeasance' is the 
improper performance
 of an act that a person may lawfully do, and 'nonfeasance' is the omission of an act which a person ought to do.” (Emphasis added.) 
Demos v. Ferris-Shell Oil Co.
, 317 Ill. App. 3d 41, 51, 740 N.E.2d 9, 17 (2000).   As noted earlier, at the time of his accident, plaintiff saw the fencing lying around the construction site injury.  If defendants did not put the fence up on the night in question, that omission was nonfeasance.

Likewise, as to the lack of a barricade at the doorway, with or without the barricade, the hole in the floor remained an open and obvious condition.  The lack of a barricade did not make the hole inherently more dangerous or 
increase
 the dangerous propensity of the hole.  The degree of the danger of a hole is potentially linked to a number of factors, such as its depth or width, not whether there are protective guards surrounding it.

Plaintiff also is unable to show that he relied on any undertaking on the part of defendants.  He could not rely on their undertaking to put fencing around the property, where, at the time, he did not even know that there was such an undertaking.  One cannot rely on an undertaking that he does not even know about and only later learns of.  Similarly, plaintiff cannot say he relied on defendants' undertaking to put barricades in front of the hole.

As Comment 
e 
of section 324A of the Restatement (Second) of Torts states: “Where the reliance of the other, or of the third person, has induced him 
to forgo other remedies or precautions against such a risk
, the harm results from the negligence as fully as if the actor had created the risk.” Restatement (Second) of Torts §324A, Comment 
e
, at 144 (1965).  Recently, this court explained that “under a voluntary undertaking theory, to establish proximate cause of the injury, the cause-in-fact component requires a showing that a plaintiff relied on the defendant's conduct.” 
Mann v. Producer's Chemical Co.
, ___ Ill. App. 3d ___, 827 N.E.2d 883 (2005).

In accordance with the foregoing, we affirm the order of the trial court granting summary judgment to defendants.

Affirmed.

CAMPBELL, P.J., and O'BRIEN, J., concur.