IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JASON SLEATER, | ) | |
| | ) | No. 37336-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD GRIFFITH I and JANE DOE | ) | UNPUBLISHED OPINION |
| GRIFFITH I, husband and wife; | ) | |
| RICHARD GRIFFITH II and JANE DOE | ) | |
| GRIFFITH II, husband and wife; | ) | |
| CHRISTOPHER ARKOOSH and JANE | ) | |
| DOE ARKOOSH, husband and wife; | ) | |
| DAVE FARB and JANE DOE FARB, | ) | |
| husband and wife; KOOTENAI | ) | |
| ELECTRIC COOP, an Idaho Cooperative; | ) | |
| PECK & PECK Excavation Company; | ) | |
| J&J DRILLING, Inc., a Washington | ) | |
| corporation; Jane Does and John Does 1- | ) | |
| 10; ABC Entities 1-10; ABC political | ) | |
| subdivision of Washington State, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Jason Sleater appeals the dismissal on summary judgment of his

personal injury action against Peck & Peck Excavation Company. Having reviewed the

parties' submissions de novo, we agree with the trial court that Mr. Sleater failed to present a genuine issue of material fact that Peck & Peck breached a duty owed Mr. Sleater. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Jason Sleater's construction company was serving as general contractor on the construction of a custom home in Liberty Lake for Richard Griffith I and Richard Griffith II when contract disputes developed between him and the Griffiths. The Griffiths' lawyer notified Mr. Sleater by letter dated September 8, 2015, that he was "banned from the construction site." Clerk's Papers (CP) at 40. The letter continued, "If you visit the site without the owners' knowledge or consent you will be guilty of trespass and the police will be called to remove you from the site." *Id.*

During his earlier work on the home, Mr. Sleater had posted the residential construction site with his company's sign, "CENTURION CONSTRUCTION." A little over a month after the Griffiths' lawyer banned him from the construction site, Mr. Sleater was contacted by a subcontractor who told him someone had painted the words "BUILDER IS A CONARTIST, LIAR & THIEF" on the CENTURION CONSTRUCTION sign. CP at 79. In the early afternoon of October 25, Mr. Sleater e-mailed this information to his lawyer and asked if he could retrieve his sign from the construction site. His lawyer said he could, and said he had notified the Griffiths' lawyer

that Mr. Sleater would be picking up his sign. The record does not reflect whether the Griffiths' lawyer received the notice or responded.

Mr. Sleater arrived at the Griffith construction site that evening at around 7:30 p.m. He would later describe it as "pitch black" when he arrived. CP at 74. As he walked to where his sign was located, he fell into a trench that had been dug by Peck & Peck for waterline access. According to Mr. Sleater, the trench was "over 300' long and anywhere from 5-8' deep." *Id.* As a result of the fall, Mr. Sleater suffered a partially torn Achilles tendon, a partially torn MCL[1], and permanently destroyed three discs in his neck that required complete replacement.

In October 2018, Mr. Sleater brought an action to recover damages for his injuries from the Griffiths, Peck & Peck, and a number of other defendants. His complaint alleged that the Griffiths "during all times material hereto were the owners of 2612 N. Chase Lane, Liberty Lake, Washington 99019 (hereinafter 'Subject Property.')." CP at 3-4. It alleged that Peck & Peck had taken part in the excavation operations "at the Subject Property" that resulted in his injury and damages. CP at 4. It alleged that "[o]n or about October 25th, 2015, at approximately 7:30 P.M., SLEATER was injured when he fell into a man-made ditch located on the Subject Property." CP at 5.

A little over a year after the filing of the lawsuit, Peck & Peck moved for summary judgment dismissal of the claims against it on the basis that Mr. Sleater "was a trespasser

---

[1] Medial collateral ligament.

at all times relevant and that [Peck & Peck had] breached no duty owed to him as a matter of law." CP at 22.

In declarations opposing summary judgment and seeking a continuance, Mr. Sleater suggested that he might not have been on "the Subject Property" at the time of the fall. *See* CP at 60 ("[I]t has not even been established that the ditch, at the location where I fell, was on Griffith's property."); CP at 74 ("The Injury took place near 2612 N. Chase Rd." and "I never made it to the sign as the trench was located along the road."). In his memorandum opposing summary judgment, he argued that even if he was a trespasser, the court should recognize a common law privilege to enter land without permission "if it is or reasonably appears to be necessary to prevent serious harm to . . . the actor, or his land or chattels," citing §§ 197(1) and 345 of the *Restatement (Second) of Torts* (AM. LAW. INST. 1965). CP at 66-67.

The trial court denied Mr. Sleater's motion for a continuance. After hearing argument of counsel, it granted summary judgment in favor of Peck & Peck. Mr. Sleater appeals.

## ANALYSIS

Mr. Sleater argues that summary judgment was improper because jury questions existed as to (1) whether he was privileged to enter the Griffith property under a common

No. 37336-3-III
*Sleater v. Griffith*

law "emergency" license that we should recognize as a matter of first impression, and (2) whether he was even on the Griffith property.

STANDARD OF REVIEW

We review an order granting summary judgment de novo. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment should be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c). Summary judgment is proper if, from all the evidence, reasonable persons could reach but one conclusion. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)).

A defendant may move for summary judgment on the ground that the plaintiff lacks competent evidence to support his or her claim. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the defendant submits adequate affidavits, the plaintiff must set forth specific facts rebutting the moving party's contentions and disclosing that a genuine issue of material fact exists. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986). "The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having

5

its affidavits accepted at face value." *Heath v. Uraga*, 106 Wn. App. 506, 513, 24 P.3d

413 (2001) (citing *Seven Gables*, 106 Wn.2d at 13).

To succeed in a claim of negligence, the plaintiff must establish "(1) the existence

of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) proximate cause

between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*, 124

Wn.2d 121, 127-28, 875 P.2d 621 (1994). Peck & Peck moved for summary judgment

on the basis that Mr. Sleater did not provide any evidence that it breached a duty owed to

Mr. Sleater. The threshold determination of whether the defendant owes a duty to the

plaintiff is a question of law. *Id*. at 128.

I. WE NEED NOT DECIDE WHETHER WASHINGTON SHOULD RECOGNIZE A COMMON
LAW PRIVATE NECESSITY PRIVILEGE BECAUSE MR. SLEATER HAS NOT
DEMONSTRATED THAT THE PRIVILEGE, IF RECOGNIZED, WOULD APPLY

In Washington, the duty of care owed by a landowner to those coming on the

landowner's property turns on the entrant's status as a common law trespasser, licensee,

or invitee. *Beebe v. Moses*, 113 Wn. App. 464, 469-70, 54 P.3d 188 (2002). The parties

agree that for premises liability purposes, someone like Peck & Peck, who acts on behalf

of a possessor of land, is subject to the same liability and enjoys the same freedom from

liability as the possessor of the land. *Williamson v. Allied Grp., Inc.*, 117 Wn. App. 451,

456-57, 72 P.3d 230 (2003).

"The general rule is that a landowner owes no duty to a trespasser, except to refrain from causing willful or wanton injury to him." *Ochampaugh v. City of Seattle*, 91 Wn.2d 514, 518, 588 P.2d 1351 (1979) (citing *Mail v. M.R. Smith Lumber & Shingle Co.*, 47 Wn.2d 447, 287 P.2d 877 (1955)). "A 'trespasser,' for purposes of premises liability," is defined under Washington law as one "'who enters the premises of another without invitation or permission, express or implied, but goes, rather, for his own purposes or convenience, and not in the performance of a duty to the owner or one in possession of the premises.'" *Singleton v. Jackson*, 85 Wn. App. 835, 839, 935 P.2d 644 (1997) (quoting *Winter v. Mackner*, 68 Wn.2d 943, 945, 416 P.2d 453 (1966)).

In moving for summary judgment, Peck & Peck presented evidence that Mr. Sleater was trespassing at the time of his injury, pointing to the allegation of his complaint that he fell into a ditch "located on the Subject Property" and the termination/trespass letter mailed to him by the Griffiths' lawyer on September 8. CP at 5. Mr. Sleater does not contend that Peck & Peck caused him willful or wanton injury. Instead, he first contends that we should adopt a "private necessity" privilege recognized by the *Restatement* under which he contends Peck & Peck would have owed him the greater duty of care owed to a licensee.

Section 197 of the *Restatement* provides in relevant part that "[o]ne is privileged to enter . . . on land in the possession of another if it is or reasonably appears to be

7

necessary to prevent serious harm to (a) the actor, or his land, or chattels." The privilege

exists "only where in an emergency" the actor enters the land, and the privilege "must be

exercised at a reasonable time and in a reasonable manner." *Id.* cmt. *a.* Section 345 of

the *Restatement* provides that if a person enters land "in the exercise of a privilege," the

duty owed is that owed a licensee, even if the person enters without consent. A minority

of states have adopted §§ 197 and 345 of the *Restatement* as a limited exception to a

landowner's common law duty to a trespasser. *See, e.g.*, *Wrinkle v. Norman*, 297 Kan.

420, 301 P.3d 312 (2013); *Lange v. Fisher Real Estate Dev. Corp.*, 358 Ill. App. 3d 962,

832 N.E.2d 274, 295 Ill. Dec. 123 (2005); *Carpenter v. Penn Cent. Transp. Co.*, 269 Pa.

Super. 9, 14, 409 A.2d 37 (1979).

No reported Washington decision has considered whether to adopt or reject the

*Restatement*'s private necessity privilege to enter another's land without consent. Illinois

has adopted the privilege and its case law illustrates its contours. A cyclist who swerved

onto the defendant's property to avoid an oncoming vehicle was held to enjoy the

privilege in *West v. Faurbo*, 66 Ill. App. 3d 815, 817, 384 N.E.2d 457, 23 Ill. Dec. 663

(1978). When no split-second decision to enter land was required and the actor had even

minimal time to consider more reasonable courses of action, the privilege was held not to

apply. *See Benamon v. Soo Line R. Co.*, 294 Ill. App. 3d 85, 90-91, 689 N.E.2d 366, 228

Ill. Dec. 494 (1997) (boy might reasonably have feared threat from others who were

chasing him, but unreasonably climbed onto railroad tracks to hide). The privilege has been held not to apply absent a true emergency. In *Lange v. Fisher Real Estate Development Corp.*, 358 Ill. App. 3d 962, 832 N.E.2d 274, 295 Ill. Dec. 123 (2005), for instance, the privilege was held not to apply to a taxicab driver who decided to chase a passenger who skipped out without paying a fare. There was no emergency and the driver unreasonably pursued the passenger into a construction site, running into an unfinished hallway where he fell approximately 10 feet onto construction materials. *Id.* at 969.

This is not an appropriate case in which to weigh whether Washington should adopt the privilege because if adopted, it would not apply. Reasonable persons considering all of the evidence submitted in support and opposition to Peck & Peck's motion could reach only one conclusion: not only was Mr. Sleater not presented with an emergency, it was not reasonable for him to walk through a "pitch black" construction site without something to illuminate the path to the sign he was retrieving.

II.     MR. SLEATER DID NOT DEMONSTRATE A GENUINE ISSUE OF FACT AS TO HIS
        TRESPASSER STATUS

Mr. Sleater's complaint alleged that his fall occurred in a "ditch located on the Subject Property." CP at 5. Yet his second assignment of error is that summary judgment was improper because "it was unknown whether Mr. Sleater was on the

Griffiths' property." Appellant's Opening Br. at 1. In resisting summary judgment, Mr.

Sleater failed to present evidence that he was not on the Griffith property.

Peck & Peck was entitled to point to the allegation of Mr. Sleater's complaint that

the fall occurred on the Griffith property. (Since Mr. Sleater sued the Griffiths as

landowners, an allegation that he was on their property appears to have been essential to

at least that claim.) In responding to Peck & Peck's adequate showing, Mr. Sleater was

not entitled to "rely on speculation [or] argumentative assertions that unresolved factual

issues remain." *Seven Gables*, 106 Wn.2d at 13; CR 56(e). He presented no competent

evidence that he was not a trespasser—indeed, his lead opposition argument was that he

*was* a trespasser, but one who enjoyed a privilege. Summary judgment was properly

granted.[2]

Peck & Peck requests attorney fees and expenses pursuant to RAP 18.1, but in

arguing for prevailing party status, it appears to be referring to a right to recover costs

(including statutory attorney fees) under Title 14 of our rules. It has not demonstrated a

basis for recovering other fees and expenses under Title 18. *E.g.*, *Parker Estates*

*Homeowners Ass'n v. Pattison*, 198 Wn. App. 16, 32, 391 P.3d 481 (2016) (RAP 18.1

allows for appellate courts to award attorney fees if authorized by a contract, statute, or

---

[2] We need not consider Mr. Sleater's suggestion in his briefing on appeal that the
trial court should have ordered a professional survey to sort out whether he was on the
Griffiths' property. His brief includes no authority or argument that supports the
proposition that a trial court should involve itself in factual disputes in that manner, nor
was the argument ever made in the trial court. *See* RAP 10.3(a)(6), 2.5(a).

recognized ground in equity.).  Peck & Peck may apply for costs, but attorney fees and

expenses are otherwise denied.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.