# Illinois Official Reports

## Appellate Court

*Garest v. Booth*, 2014 IL App (1st) 121845

| | |
|---|---|
| Appellate Court Caption | SANDRA M. GAREST, Plaintiff-Appellee, v. BARRY E. BOOTH and BRIGHAM CONSTRUCTION COMPANY, Defendants-Appellants. |
| District & No. | First District, First Division<br>Docket No. 1-12-1845 |
| Filed | May 19, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when she fell down a stairwell at a building owned by one defendant and constructed by defendant construction company, the trial court properly denied the construction company's motion for a directed verdict and a judgment *n.o.v.*, since the company failed to install lighting for the stairwell that remained on at all times as required by the building codes, the construction company was not an owner or occupier of the building and was not entitled to argue that plaintiff was a trespasser, and the verdict against the construction company was not against the manifest weight of the evidence; however, a new trial was required as to the owner based on the jury's incorrect answers to special interrogatories finding that plaintiff was an invitee on the premises, not a trespasser, and the improper instructions concerning plaintiff's status as an implied invitee. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-2882; the Hon. James E. Sullivan, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and vacated in part; cause remanded with directions. |

| Counsel on Appeal | Hughes, Socol, Piers, Resnick & Dym, Ltd., of Chicago (Roger Littman and Mark A. Cisek, of counsel), for appellant Barry E. Booth. |
| --- | --- |
| | |
| | Purcell & Wardrope, Chtrd. (Michael D. Sanders, of counsel) and Law Offices of Gerard W. Prudden (Gerard W. Prudden, of counsel), both of Chicago, for appellant Brigham Construction Company. |
| | |
| | Law Offices of Mirella Capellupo Siwik (Mirella Capellupo Siwik, of counsel) and Joan M. Mannix, both of Chicago, for appellee. |
| | |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion. |

## OPINION

¶ 1      This appeal arises from a November 22, 2011 judgment entered by the circuit court of Cook County which awarded damages in the amount of $140,388.78 to plaintiff-appellee Sandra M. Garest (Garest) and a May 23, 2012 order entered by the circuit court which denied the posttrial motions of defendants-appellants Brigham Construction Company (Brigham) and Barry E. Booth (Booth). Both defendants appeal raising different issues. We will consider each defendant's arguments in turn. On appeal, defendant Brigham argues that: (1) the trial court erred in denying its motion for summary judgment; motion for a directed verdict; and motion for judgment notwithstanding the verdict; and (2) based on the trial court's errors, it is entitled to a new trial. Defendant Booth argues that: (1) the trial court erred in allowing Garest to recover on a theory of "implied invitation" because Garest was a trespasser as a matter of law; (2) the trial court erred in giving improper jury instructions; (3) the trial court erred in denying Booth's motion for a directed verdict; and (4) based on the trial court's errors, Booth is entitled to a new trial. For the following reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County.

¶ 2                              BACKGROUND

¶ 3      On the night of December 21, 2006, Garest sustained multiple injuries when she fell down a stairwell at Booth Orthodontics located at 12635 West 143rd Street in Homer Glen, Illinois (the Booth building). The Booth building was built by Brigham and is owned by Booth. On March 14, 2008, Garest filed a complaint for negligence in the circuit court of Cook County against Palos Bank and Trust Company (Palos). Palos was the trustee of the land trust that

owned the Booth building. Palos is not a party to this appeal. On July 1, 2008, Garest filed her first amended complaint against Booth and Jane E. Booth (collectively, the Booths). The Booths are the beneficial owners of the property held by the land trust. On June 18, 2009, the Booths filed a motion for summary judgment arguing, in pertinent part, that at the time of the accident Garest was a trespasser on the Booths' property as a matter of law. Thus, the Booths argued that they owed no duty of care to Garest except to refrain from willful and wanton conduct. On August 26, 2009, the trial court granted the Booths' motion for summary judgment on Garest's first amended complaint. The court granted Garest leave to amend her complaint.

¶ 4        On September 9, 2009, Garest filed a second amended complaint against the Booths. In Garest's second amended complaint, for record purposes only, she repled count I for negligence. She also alleged count II for negligence to foreseeable users and/or trespassers, and count III for willful and wanton conduct. On September 30, 2009, the Booths filed a motion for summary judgment on Garest's second amended complaint. The Booths repeated the arguments from their first motion for summary judgment, and also argued that Garest failed to establish that she was a foreseeable user and/or reasonably anticipated trespasser; and that the evidence failed to support the allegations of willful and wanton conduct. On November 16, 2009, the trial court denied the Booths' second motion for summary judgment. On January 20, 2010, the trial court granted Garest leave to amend her complaint to add Brigham as a defendant. On March 5, 2010, Garest filed a third amended complaint against the Booths and Brigham. On April 6, 2011, Brigham filed a motion for summary judgment, which was denied. The trial court again granted Garest leave to amend her complaint. On November 15, 2011, Garest filed a fourth amended complaint against Brigham and Booth individually as the owner of the Booth building. Garest alleged the following counts: count I for negligence against Brigham, count II for negligence to foreseeable users and/or trespassers against Booth, count III for willful and wanton conduct against Booth, and count IV for negligence against Booth. Count IV was repled for record purposes only.

¶ 5        On November 16, 2011, the matter proceeded to a jury trial in the circuit court of Cook County on the fourth amended complaint. The evidence adduced at trial established the following. On December 21, 2006, Garest was driving to Modell Funeral Home (Modell) located on 143rd Street in Homer Glen, Illinois, to meet her friend Kimberly Cescato (Cescato) and attend a wake. Modell is located just east of the Booth building in the same general area. Modell shares a common vehicle entrance with the Booth building. Modell's parking lot is between Modell and the Booth building, and the parking lot runs up to the edge of the building. The Booth building is the building closest to the street and has a sign in front of it that says "Booth Orthodontics." Modell is farther back in the parking lot. Cescato stated that she arrived before Garest and waited for her at the entrance of Modell, and that she had no trouble distinguishing Modell from the Booth building. The premises of Modell were well lit to announce that it was hosting an event. Cescato stated that 143rd Street is a well lit street.

¶ 6        Garest testified that before the accident, she had never been to Modell. On the night of the accident, the weather was cool with misty rain and patchy fog. She expected to arrive at Modell a little after 7 p.m. Garest saw a sign for Modell and pulled into the corresponding parking lot. She parked her vehicle facing west and began walking toward the building nearest to her vehicle. Garest was unaware that she was walking toward the Booth building instead of toward Modell. She noticed two pillars in front of the building that looked like an entrance, and also

noticed a light shining on the building. Garest testified that she could see 4 to 5 car lengths, or 45 to 60 feet, in front of her. Garest stepped up onto a curb and began walking on the sidewalk alongside the Booth building. The building and its interior were dark but there was a light on the ground that illuminated the sidewalk. Garest testified that it took a few moments for her to adjust to the light, which shone in her eyes. She noticed some shrubs to the left of the sidewalk. The rest of the area around the Booth building was relatively dark, but there was some general light from the parking lot and street. Garest walked along the sidewalk for about 15 feet without anything obstructing her view. As she walked, she suddenly had the feeling that there was no ground beneath her feet and she realized that she was falling. Garest fell down a stairwell that led to a basement entrance of the Booth building. She felt a tremendous impact on her face and her teeth. She was not able to break her fall. Garest testified that she did not see the stairs before she fell. After the fall, while at the bottom of the stairs, Garest did not see any light fixtures but noticed a door to her right.

¶ 7        Garest testified that approximately three weeks after the accident, she returned to the stairwell of the Booth building around 7:30 p.m. to try and figure out why she had not seen the stairs when she fell. She took photos and a video of the premises. The weather on that day was cold with a light snow. Garest parked her vehicle in the same parking lot and noticed the Modell building in the back of the lot. She walked alongside the Booth building and saw the sign for Booth Orthodontics, a railing going down the stairwell, and the light along the sidewalk. Garest walked down the stairs and took a photo and video at the bottom of the stairwell. She noticed a light fixture at the bottom of the stairwell but it was not turned on.

¶ 8        Garest received medical treatment for her injuries related to the accident from December 2006 until about December 2009. The total amount of Garest's medical bills was $41,293.86. She testified that her injuries did not permanently affect her ability to perform the essential functions of her occupation.

¶ 9        Booth testified that he owns the Booth building. The Booth building was designed by an architect named Simon Batistich (Batistich). In spring of 2001, Booth selected Brigham to construct the Booth building. The drawings of the Booth building were approved by Will County. Booth testified that when the building was first designed, it did not have a basement exit. The fire inspector required Booth to include a basement exit in the plans for the building, and the first time the basement exit was drawn into the plans it was located on the east side of the building. The plans for the basement exit were modified a few times due in part to the location of a water main. The basement exit was finally located on the north side toward the middle of the building. The basement exit contains the stairwell at issue in this case. Around February or March 2002, Booth took occupancy of the building.

¶ 10        As Booth explained, the layout of the building is somewhat unique. The north side of the building, which contains the stairwell, faces the street. However, the north side of the building is the rear of the building. The entrance and front side of the building is the south side, which faces away from the street. The parking lot for the Booth building is located to the south of the entrance. There is no signage indicating that the parking lot to the south of the entrance is for Booth Orthodontics. Booth testified that Modell's parking lot contains no signage that indicates which building the parking lot accommodates. Booth allows Modell patrons to park in his parking lot. Likewise, Modell allows Booth patrons to park in its parking lot. Booth testified that he has been told that, on occasion, people have come into the Booth building thinking they were entering Modell. The mistaken customers park their vehicles in Modell's

parking lot and enter the nearest building. After the Booth building was constructed, Booth consulted a landscape architect who recommended that Booth plant some evergreens on the north side of the Booth building because Booth did not want the stairwell to be the main focus of attention. On the landscape architect's recommendation, Booth planted evergreens next to the stairwell.

¶ 11        Booth testified that the stairwell in question contains a light fixture at the bottom of the stairs. The light fixture is controlled by a light switch inside the basement door. Booth stated that the light bulb inside the light fixture is a photocell bulb, which means that it turns on when it gets dark outside. However, in order for the light bulb to function, the light switch inside the basement door must be in the "on" position. Booth testified that the light will not automatically remain on. Booth is responsible for the day-to-day maintenance of the light bulb and he replaces the bulb when it burns out. Booth testified that every night before he leaves the building, he has a checklist of things that he has to do. Part of Booth's checklist includes making sure that the basement light switch is turned on. Booth stated that his hours of operation during the week are 8 a.m. to 5 p.m., except for Monday when the building is open from 12 p.m. to 8 p.m. Booth Orthodontics is closed on Friday, Saturday, and Sunday. When he closes at 5 p.m., Booth leaves the building around 6 p.m. On the night of the accident, Booth closed at 5 p.m. and left the building at 6 p.m. Booth testified that he assumed that on the night of the accident, the light switch was turned on. Booth also makes sure that the outdoor lights are on. Booth stated that at the bottom of the stairwell, there is a sign that states that the main entrance is at the rear of the building. Booth testified that he put up the sign because, in the past, delivery men had left packages in the stairwell on the north side of the building. Booth's staff does not use the stairwell to exit the building on a regular basis.

¶ 12        James Brigham (James) testified that he has been building commercial and residential properties as a general contractor for 35 years. In early 2001, Booth retained James and his company to build the Booth building. James testified that several changes were made to the drawings for the Booth building before the final plans were submitted and approved. James stated that he constructs buildings according to the approved drawings. If a change is going to be made from the drawings, he must get approval before the drawings are changed. Changing the location of the stairwell on the Booth building is a change that required approval. James testified that the approved drawings for the building contained instructions for the stairwell which stated "emergency and normal lighting at the exit stair provided at the eve [*sic*]." James explained that an eave is an overhang. The permit drawings also called for down-lights to be installed on three corners of the Booth building. The lights above the stairwell and the three down-lights were never installed. James testified that the decision not to install the lights was a minor change from the plans of the building and did not need approval from the county.

¶ 13        James acknowledged that he had seen a May 22, 2001 letter from B&F Technical Code Services (B&F). B&F was hired to review the plans for the Booth building to make sure the plans complied with the fire code. The May 22, 2001 letter referenced section 1024.1 of the Building Officials and Code Administrators International code (BOCA code) and stated "normal and emergency lighting to be installed in exit discharge area." BOCA is a building code that is used by municipalities in the region around Will County. James was also questioned about an April 16, 2001 letter from the Will County land use department (Will County letter), but he stated that he did not recall reading that letter. At the time of trial, the Booth building was in compliance with all safety inspections.

- 5 -

¶ 14    John Van Ostrand (Van Ostrand) testified as an expert for Garest. Van Ostrand has been a licensed architect in Illinois since 1976. He is a forensic architect who focuses on problems associated with buildings. Van Ostrand testified that he reviewed numerous depositions and photographs in addition to conducting two site inspections of the Booth building and the stairwell. Van Ostrand stated that the drawings for the building differed from the actual construction of the building. In the drawings, the stairwell is located at the northwest corner of the building, but in reality it is actually located in the middle of the north side of the building. Also, the drawings show four lights in the area, but in reality there was only one light that was installed. Van Ostrand testified that the BOCA code requires that exit discharge areas provide "one foot-candle" of light at the walking surface. One foot-candle of light is enough illumination for the area. An exit discharge area is the means of ingress and egress by which a person enters or leaves the building. The Booth building stairwell is part of an exit discharge area.

¶ 15    Van Ostrand testified that the drawings for the Booth building called for emergency and normal lighting at the eave of the stairwell. Van Ostrand explained that the lights were to be connected to the emergency lighting circuit. The lights were to provide normal and emergency illumination, which means that the lights would be on all the time and could not be turned off. In case of a power failure, the power source switches over and the lights are run by an emergency backup battery that would keep the lights on for one hour after the power failure. The drawings also called for down-lights to be installed on three corners of the Booth building. The three down-lights were never installed.

¶ 16    Van Ostrand stated that there was an up-light installed on the Booth building in the northwest corner. He opined that the up-light was hazardous because it shined up into a person's eyes as he or she walked past it, as opposed to shining down on the walking surface. Van Ostrand mentioned that the Will County letter stated that any lighting proposed for the building should be down-lighting. Van Ostrand testified that he measured the level of illumination in and around the stairwell using a light meter. Van Ostrand stated that the light fixture in the stairwell was inadequate because it did not provide enough illumination. The stairwell light fixture only provided one foot-candle of illumination directly under the light. Van Ostrand testified that the lighting in the area of the stairwell did not meet the applicable standards for safe ingress and egress. The stairwell light was also inadequate because it was controlled by a switch, and exit lighting is supposed to be turned on 100% of the time. Van Ostrand testified that the lighting installed at the Booth building violated the Will County zoning ordinance and sections 1024.1 and 1024.2 of the BOCA code. He stated that the accident would have been prevented if the stairwell light had been turned on or if the lighting that was drawn in the building plans had been installed.

¶ 17    Further, Van Ostrand stated that if the owner did not want to keep the stairs illuminated at all times, he could have put up a gate that restricted access to the stairway. Van Ostrand testified that there was no duty to put up a gate, but it was the owner's responsibility to either light the area at all times or prevent access to the area.

¶ 18    At the close of Garest's case in chief, Booth filed a motion for a directed verdict. Booth argued that the trial court should direct a verdict in his favor on count II of the fourth amended complaint because Garest was not a foreseeable trespasser; and also on count III of the fourth amended complaint because the evidence failed to support the allegations of willful and wanton conduct by Booth. Brigham also filed a motion for a directed verdict at that time.

Brigham argued that the trial court should direct a verdict in his favor on count I of the fourth amended complaint because Garest was a trespasser on Booth's premises and she did not allege that Brigham's conduct was willful and wanton. The trial court denied both motions. Additionally, at the close of all the evidence, both Brigham and Booth renewed their respective motions for a directed verdict. Again, the trial court denied both motions. On November 22, 2011, the jury returned a verdict of $140,388.78 in favor of Garest and against Brigham and Booth. The jury apportioned the legal responsibility as follows: 64% to Brigham, 34% to Booth, and 2% to Garest. There were three special interrogatories that were submitted to the jury. Booth originally prepared the special interrogatories. However, at the jury instruction conference, Garest proposed amendments to the special interrogatories that were adopted by the trial court over Booth's objection. The jury answered the special interrogatories as follows:

"Q. Was Plaintiff Sandra Garest upon the premises of Defendant Barry E. Booth with express or implied invitation?

A. Yes.

Q. Was Plaintiff Sandra Garest a trespasser upon the property of Defendant Barry E. Booth?

A. No.

Q. Do you find that the plaintiff's contributory negligence was greater than 50% of the total proximate cause of her injuries?

A. No."

¶ 19   Also, on November 22, 2011, the trial court entered its judgment of $140,388.78 in favor of Garest and against Booth and Brigham. Both Booth and Brigham respectively filed motions for extension of time to file a posttrial motion and to stay enforcement of the judgment. Those motions were granted and both defendants were given until February 3, 2012 to file their posttrial motions. On February 3, 2012, Booth filed a "renewed motion for directed verdict and post-trial motion." Booth requested that the trial court grant the motion for a directed verdict or, alternatively, grant judgment notwithstanding the verdict or a new trial for Booth. Likewise, on February 3, 2012, Brigham filed a "renewed motion for directed verdict and post-trial motion." Brigham renewed its motion for summary judgment and requested the following relief from the trial court: summary judgment in favor of Brigham; a directed verdict in favor of Brigham; judgment notwithstanding the verdict in favor of Brigham; a new trial on all issues; or a remittitur. On May 23, 2012, the trial court denied all the posttrial motions filed by both defendants. On June 20, 2012, Brigham and Booth both filed a timely notice of appeal. Therefore, we have jurisdiction to consider Brigham's and Booth's arguments on appeal pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008).

¶ 20                                    ANALYSIS

¶ 21   Both Brigham and Booth present numerous arguments on appeal. In the interest of clarity, we will first discuss Brigham's arguments and will then discuss Booth's arguments.

¶ 22   We determine the following issues related to Brigham: (1) whether the trial court properly held that Brigham owed Garest a duty of ordinary care; (2) whether the trial court erred in

denying Brigham's motion for a directed verdict and motion for judgment notwithstanding the verdict; and (3) whether Brigham is entitled to a new trial based on the court's errors.[1]

¶ 23    We first determine whether the trial court properly held that Brigham owed Garest a duty of ordinary care.

¶ 24    We note that Brigham presents many arguments as to why the trial court erred in denying its various motions. Specifically, Brigham argues that: it owed no duty to Garest because her accident was not reasonably foreseeable to Brigham; it owed no duty to Garest because the stairwell was an open and obvious condition; it owed no duty to Garest because the burden of guarding against Garest's accident was too high; Garest did not prove that Brigham's conduct was willful and wanton; and Garest did not establish that Brigham's conduct was the proximate cause of her accident. However, those assertions are largely dependent on one main issue: whether Brigham owed Garest a duty of ordinary care or owed her the duty to refrain from willful and wanton conduct as an owner or occupier of land. Determining the appropriate duty of care Brigham owed to Garest will guide this court's analysis of Brigham's underlying arguments. Therefore, we first consider the parties' arguments regarding whether Brigham owed Garest the duty to refrain from willful and wanton conduct as an owner or occupier of land.

¶ 25    Brigham argues that the trial court erred as a matter of law by holding that Brigham's duty toward Garest was a duty of ordinary care. Rather, Brigham contends that it owed the same duty of care toward Garest as Booth owed. That is the duty owed as an owner or occupier of land. Brigham asserts that in Illinois, a contractor that allegedly creates a dangerous condition on a piece of land enjoys the same freedom from liability to trespassers as if the contractor were the possessor of the land. Brigham argues that it is being held liable for the same dangerous condition as Booth, and as such it should be held to the same duty of care as Booth. Thus, Brigham asserts that it is entitled to present the same defenses that Booth is able to present, including the defense that Garest was a trespasser to whom Brigham only owed a duty to refrain from willful and wanton conduct.

¶ 26    In response, Garest argues that the trial court properly held that Brigham owed Garest a duty of ordinary care. Garest argues that Brigham's duty of care could not be that of an owner or occupier because Brigham had no control over the Booth building and did not possess the building. Garest contends that Brigham's duty of care was based on its status as an independent contractor, and it had a duty to exercise reasonable care in construction of the Booth building. Also, Garest asserts that the cases cited by Brigham are distinguishable from the instant case. The contractors in those cases were considered to be owners or occupiers due to their continuous possession or control over the premises in question at the time of the occurrence. Thus, Garest argues that Brigham's duty of care was not based on the owner or occupier standard, and she was not required to plead or prove that Brigham engaged in willful and wanton conduct.

---

[1]We note that Brigham argues that the trial court erred in denying its motion for summary judgment. However, when the trial court denies a motion for summary judgment and the matter of proceeds to trial, the order denying the motion for summary judgment merges with the final judgment ad is not appealable. *Labate v. Data Forms, Inc.*, 288 Ill. App. 3d 738, 740 (1997). Therefore, we are unable to address Brigham's arguments regarding its motion for summary judgment.

¶ 27    A cause of action for negligence consists of the following elements: "(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury proximately caused by the breach." *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1051 (2010). "Whether a duty exists is a question of law to be determined by the court." *Id*. In determining whether a duty exists, four factors are typically considered: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Id*. at 1051-52.

¶ 28    A landowner owes a reasonable duty of care to all entrants upon his property regarding the state of the premises. *Benamon v. Soo Line R.R. Co.*, 294 Ill. App. 3d 85, 89 (1997). As to trespassers, no duty of reasonable care is owed except to refrain from willfully and wantonly injuring the trespasser. *Id*. On the other hand, a cause of action for negligent construction is not dependent upon an injured party's status as a business invitee, as may be the case with a cause of action for negligence against an owner or operator of a business. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 432 (2006). "The law in Illinois is that in order for a defendant to be an owner-occupier or possessor of land, he must occupy or possess the land with the intent to control it." *Williams v. Sebert Landscape Co.*, 407 Ill. App. 3d 753, 756 (2011); see also *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362 (2009); *Kotecki v. Walsh Construction Co.*, 333 Ill. App. 3d 583 (2002).

¶ 29    Yet, Brigham argues that it owed a duty of care to Garest to the same extent as an owner or occupier of land. In support of its argument, Brigham cites numerous cases that held that a general contractor was subject to liability to the same extent as an owner or possessor of land. See *Lange v. Fisher Real Estate Development Corp.*, 358 Ill. App. 3d 962 (2005); *Randich v. Pirtano Construction Co.*, 346 Ill. App. 3d 414 (2004); *Deibert v. Bauer Brothers Construction Co.*, 188 Ill. App. 3d 108 (1989); *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316 (1978). However, the cases cited by Brigham are not analogous to the instant case. In *Corcoran*, the supreme court addressed the issue of whether a county that caused the condition on which a child was injured was subject to the same liability as the village that owned the premises. *Corcoran*, 73 Ill. 2d at 324. In finding that the county and village were subject to the same liability, the court noted that the county managed, maintained, and controlled the premises in addition to creating the hazardous condition. *Id*. In *Lange* and *Deibert*, the appellate court held that the defendant contractors were subject to liability to the same extent as though they were possessors of land. *Lange*, 358 Ill. App. 3d at 964-67; *Deibert*, 188 Ill. App. 3d at 109-10. However, in both cases the contractors were actually *in possession* of the land when the plaintiffs' injuries occurred. *Lange*, 358 Ill. App. 3d at 964-65; *Deibert*, 188 Ill. App. 3d at 109. In *Randich*, the appellate court held that the defendant contractors came within the scope of the fireman's rule because they were working on an easement on behalf of the owners of the easement. *Randich*, 346 Ill. App. 3d at 424. Unlike the cases cited by Brigham in this case, Brigham had completed construction of the Booth building several years before Garest's accident and had no further ties with the building until the accident occurred. After construction of the Booth building was completed, Brigham had absolutely no authority to possess, control, or manage the building. Therefore, Brigham had no relationship with the Booth building that would qualify it as an owner or occupier of the building.

¶ 30    Further, as the trial court noted in its May 23, 2012 order denying the defendants' posttrial motions, Brigham's arguments regarding its duty to Garest as an owner or occupier are based on premises liability theories. However, Garest's only allegations against Brigham in this case

are based on ordinary negligence theories. Therefore, neither the allegations in Garest's fourth amended complaint nor Brigham's status as a general contractor supports Brigham's argument that as an owner or occupier it only owed Garest a duty to refrain from willful and wanton conduct. Accordingly, we hold that the trial court properly held that Brigham owed Garest a duty of reasonable care in construction of the Booth building.

¶ 31    We next determine whether the trial court erred in denying Brigham's motion for a directed verdict and motion for judgment notwithstanding the verdict.

¶ 32    As a preliminary matter, we note that in addition to its other arguments, Brigham argues that it owed no duty to Garest because the stairwell was an open and obvious condition and Garest did not prove that Brigham's conduct was willful and wanton. However, those arguments are grounded in premises liability theories and are dependent upon the notion that Brigham owed a duty of care to Garest to the same extent as an owner or occupier of land. See *McDonald v. Northeast Illinois Regional Commuter R.R. Corp.*, 2013 IL App (1st) 102766-B, ¶ 22 ("The open and obvious doctrine is an exception to [the landowner's] general duty of reasonable care *** and provides that the landowner is not liable for physical harm to individuals caused by any activity or condition on the land whose danger is known or obvious unless the landowner should anticipate the harm despite such knowledge or obviousness ***."); *Lange*, 358 Ill. App. 3d at 966 ("[A] landowner owes no duty of care to a trespassing adult except to refrain from willfully and wantonly injuring him."). Because we have established that Brigham cannot be considered a landowner in this case, it follows that Brigham is unable to avail itself of arguments pertaining to landowners that are based on premises liability principles. Thus, we need not address Brigham's arguments regarding the open and obvious doctrine and willful and wanton conduct as those arguments relate to theories that are unavailable to Brigham.

¶ 33    Turning to the merits of Brigham's remaining arguments, we determine whether the trial court erred in denying Brigham's motion for a directed verdict and motion for judgment notwithstanding the verdict. Brigham argues that the trial court erred in denying its motions because Brigham owed no duty to Garest since her accident was not reasonably foreseeable to Brigham when the Booth building was constructed. Brigham argues that Garest's accident was unforeseeable due to the individual and combined acts of Booth failing to maintain a lighted stairwell; Garest inexplicably wandering onto Booth's premises; and Garest failing to notice the stairwell. Brigham contends that it installed a light in the stairwell and could expect that Booth would maintain the light and ensure that the light was turned on. Further, Brigham asserts that Garest was negligent for walking onto Booth's premises and falling down the stairwell. Brigham points out that there were lights in the area of the stairwell, nothing was obstructing Garest's vision, and Garest was able to see other details of the building. Also, Brigham argues that it was not foreseeable that a person would try to walk into a darkened building, through a fire exit, at night. Thus, Brigham contends that because Garest's accident was not reasonably foreseeable to Brigham, it did not owe a duty to Garest.

¶ 34    Also, Brigham argues that it did not owe a duty to Garest because the burden of guarding against Garest's accident was too high. Brigham contends that it installed a light in the stairwell of the Booth building during construction and the light emitted 1.22 foot-candles of illumination when it was turned on. Brigham points out that Van Ostrand testified that Garest would have seen the light if it had been turned on. Thus, Brigham asserts that by holding it liable for Garest's accident, the trial court imposed a duty on Brigham to ensure that the

stairwell light remained lit at the time of the accident. Brigham claims that the burden of this duty is too high. Brigham argues that it constructed the Booth building four years before Garest was injured and that it had no relationship with the building after construction. After Brigham turned over the building to Booth, it had no right to control, enter, or use the premises. Brigham claims that it cannot have been expected to maintain the light at all times and ensure that it was functioning. Therefore, Brigham argues that it owed no duty to Garest because the burden of guarding against her accident was too high.

¶ 35 Further, Brigham argues that Garest failed to prove that its conduct was the proximate cause of her accident. Specifically, Brigham contends that its conduct was neither the cause in fact nor the legal cause of Garest's accident. Brigham claims that its conduct was not the cause in fact of Garest's accident because it installed a light in the stairwell, and Van Ostrand testified that the light would have prevented Garest's accident. Brigham asserts that its conduct was not the legal cause of Garest's accident because its relationship with the Booth building was too attenuated, and it could not foresee the intervening acts of Garest entering the building at night and Booth failing to turn on the stairwell light. Brigham claims that its failure to install additional lights was simply a condition by which the accident was made possible. Thus, it argues that its conduct was not the proximate cause of Garest's accident. This is in contrast to the unrebutted expert testimony of Van Ostrand. He testified that the absence of lighting as included in the approved plans was the cause of Garest's fall. Nevertheless, Brigham argues that the trial court erred in denying its motion for a directed verdict and motion for judgment notwithstanding the verdict.

¶ 36 In response, Garest argues that her accident was reasonably foreseeable to Brigham. Primarily, Garest contends that Brigham confuses the concept of duty with the concept of breach of duty. Garest claims that the effect of Brigham failing to properly install a stairwell light raises an issue of breach of duty for the jury to decide. Garest asserts that Brigham owed her a duty of reasonable care as an independent contractor in construction of the Booth building. Garest argues that it is entirely foreseeable that an accident could occur because Brigham failed to install the normal and emergency lighting and the corner down-lighting, as mandated by the plans approved for the construction of the building. The evidence showed that the light in the surrounding area of the stairwell was inadequate and in violation of the BOCA codes. Also, Garest argues that it was for the jury to weigh the evidence and decide whether she was negligent in falling down the stairwell. Thus, Garest argues that her accident was reasonably foreseeable to Brigham.

¶ 37 Next, Garest argues that Brigham owed her a duty of reasonable care to guard against the accident. Such a burden was within the bounds of propriety. Garest contends that Brigham incorrectly states that the court held that Brigham's duty was to maintain the stairwell light and ensure that it remained lit at the time of the accident. Rather, Garest points out that her allegations against Brigham were based on negligent construction of the Booth building for failing to adequately light the sidewalk and stairwell in violation of the BOCA codes and failing to reasonably inspect the premises after construction. Garest did not allege that Brigham was negligent for failing to maintain the stairwell light. Thus, Garest argues that Brigham's only burden was to show that it had constructed the Booth building according to the plans and in compliance with the applicable safety codes. Garest contends that Brigham's burden was minimal and had nothing to do with continually maintaining the building or the

- 11 -

lighted stairwell. Therefore, Garest argues that Brigham's burden of guarding against her accident was not too high, as Brigham argued because it owed her a duty of reasonable care.

¶ 38    Further, Garest argues that Brigham's conduct was the proximate cause of her accident. Garest contends that proximate cause is a fact-specific issue meant for the jury's consideration. Garest asserts that proximate cause can only be decided as a matter of law where the facts show that the plaintiff would never be entitled to recover. Also, Garest points out that Brigham argues that its relationship with the Booth building was too attenuated to be the proximate cause of her accident. Garest contends that Brigham's argument is misplaced because its liability is based on failing to construct the building in accordance with the approved plans and safety codes, not based on the maintenance or control of the stairwell light. Further, Garest argues that her actions and Booth's actions were not intervening acts that broke the chain of causation between Brigham and Garest. She asserts that Illinois law states that there can be more than one proximate cause, and a person that is guilty of negligence cannot avoid liability simply because another person was also guilty of negligence and contributed to the same injury, even though the injury would not have occurred but for the latter's negligence. Garest argues that Booth's negligence in no way excuses Brigham's negligence. Therefore, Garest asserts that she sustained her burden of proof on the issue of proximate cause. Based on all of her arguments, Garest contends that the trial court did not err in denying Brigham's motion for a directed verdict and motion for judgment notwithstanding the verdict.

¶ 39    "Judgment notwithstanding the verdict is properly granted where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Washington v. City of Chicago*, 188 Ill. 2d 235, 238 (1999). When the plaintiffs have recovered against the defendants for negligence, judgment notwithstanding the verdict is required if the defendants did not owe the plaintiffs a duty. *Id*. at 238-39. The trial court's ruling on a motion for judgment notwithstanding the verdict is reviewed *de novo*. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 21. A motion for a directed verdict will only be granted if the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). An order disposing of a motion for a directed verdict is reviewed *de novo*. *Id*.

¶ 40    As previously discussed, in determining whether a duty exists, four factors are typically considered: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Wilfong*, 401 Ill. App. 3d at 1051-52. In order for a duty to be imposed, the accident at issue must have been reasonably foreseeable as the creation of a legal duty requires more than a mere possibility of an occurrence. *Cunis v. Brennan*, 56 Ill. 2d 372, 375-76 (1974). In determining the foreseeability of an incident, the court considers what was apparent to the defendant at the time of his conduct, not what may become apparent through hindsight. *Id*. at 376.

¶ 41    Generally, proximate cause is an issue of material fact to be determined by the jury. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004). However, proximate cause may be determined as a matter of law where the facts show that the plaintiff would never be entitled to recover. *Id*. at 257-58. Proximate cause consists of two requirements: cause in fact and legal cause. *Id*. "A defendant's conduct is a 'cause in fact' of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury." *Id*. at 258.

If the plaintiff's injury would not have occurred absent the defendant's conduct, then the conduct is a material element and substantial factor in bringing the injury. *Id*. On the other hand, " 'legal cause' " is based largely on foreseeability and the court must consider whether the injury is of the type that a reasonable person would see as a likely result of his conduct. *Id*. If a defendant's conduct does nothing other than furnish a condition by which the injury is made possible, and the condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Id*. at 259. Moreover, proximate cause "need not be the only, last or nearest cause; it is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes injury." *Leone v. City of Chicago*, 235 Ill. App. 3d 595, 603 (1992). Thus, if there is more than one proximate cause of an injury, one guilty of negligence cannot avoid liability simply because another person was also guilty of negligence contributing to the same injury, even if the injury would not have occurred but for the latter person's negligence. *Id*. at 603-04.

¶ 42    We agree with Garest's arguments. Regarding the foreseeability issue, Garest has shown that her accident was reasonably foreseeable to Brigham. Garest alleged that Brigham was negligent in its construction of the Booth building. It is undisputed that Brigham failed to follow the approved plans for the building and failed to comply with the BOCA codes and local zoning ordinance. Specifically, Brigham failed to install normal and emergency lighting above the stairwell and failed to install down-lighting in the northwest corner of the building. There was unrebutted expert testimony that such lighting would have prevented the accident. Thus, it follows that it is reasonably foreseeable that a person may fall down the stairwell of the building in the absence of such lighting. We are unpersuaded by Brigham's argument that Garest's accident was not foreseeable because it installed a stairwell light that it could not be expected to maintain. As Garest points out, Van Ostrand's unrebutted testimony was that the stairwell light was inadequate because the standard requires that exit lighting must stay on at all times and should not be controlled by a switch. Thus, even though Brigham installed a light in the stairwell, it did not function as it was required to, nor was it consistent with the approved plan. It is foreseeable that a person could fall down a stairwell in the dark if the stairwell was unlit. A light that is not designed to stay on continuously will likely leave the stairwell without light at times. It can be inferred that prevention of just this type of accident is the reason for the lighting requirement in a building of this type. Therefore, Garest's accident was reasonably foreseeable to Brigham.

¶ 43    Based on this analysis, we cannot say that the burden of guarding against Garest's accident was too high for Brigham, thereby obviating a duty of care. Brigham incorrectly states that the trial court imposed a duty on it to maintain the stairwell light and ensure that it remained lit at the time of the accident. In actuality, Garest alleged that Brigham was negligent in *constructing* the Booth building in that it failed to adequately light the sidewalk and stairwell by omitting the lighting that was part of the approved plans in violation of the BOCA codes and failing to reasonably inspect the premises after construction to ensure that the required lighting was in place. The rational inference is that Brigham would have had another opportunity to install the lighting if it had inspected the premises after construction. Garest did not make any allegations regarding Brigham's duty to maintain or control the stairwell light. Garest alleges that Brigham's burden was to show that it had followed the approved plans for the Booth building and installed the proper lighting as mandated by the plans. Such a burden would not have required Brigham to do any more than it was hired to do. It certainly did not

- 13 -

require Brigham to exert any control over the building or perform any maintenance. Van Ostrand testified that according to the BOCA codes, the lighting on the sidewalk leading to the stairwell at the time of Garest's fall was inadequate, and the stairwell light itself was also inadequate. Therefore, Brigham had a duty of care to follow the approved plans and install adequate lighting during construction of the building. Brigham provided no rebuttal to Van Ostrand's opinion on this pivotal point.

¶ 44      The issue of proximate cause is generally a question of fact for the jury. Brigham argues that its conduct was not the cause in fact of Garest's accident because it installed a light in the stairwell and Van Ostrand testified that the accident would not have happened if the area had been lit. However, as we have noted, Van Ostrand also testified that the stairwell light was inadequate because the safety codes and approved plans required that the light was to stay on at all times, as opposed to being operated by a switch. Moreover, Van Ostrand's unrebutted testimony established Brigham's failure to install the corner lights and the lights above the stairwell as mandated by the approved plans was clearly the reason that Garest did not see the stairs and therefore, the cause in fact of her injuries. Also, Brigham's conduct is the legal cause of Garest's injuries. Garest falling down the stairwell is exactly the type of accident a reasonable person would see as a likely result of lack of proper lighting in and around the stairwell. Brigham was responsible for that omission. Just because Booth may also have been negligent in failing to turn on the one light that was present does not mean that Brigham can avoid liability. Indeed, if Brigham had correctly installed all of the lights in the approved plans including the stairwell light so that it remained turned on at all times, as mandated by the BOCA codes, then Garest's accident could have been avoided regardless of Booth's actions. Additionally, the theory of liability leveled against Brigham would not be applicable under such a scenario. Therefore, Garest has met her burden of proof regarding the proximate cause element of her claim as related to Brigham. Accordingly, we hold that the trial court did not err in denying Brigham's motion for a directed verdict and motion for judgment notwithstanding the verdict.

¶ 45      We next determine whether Brigham is entitled to a new trial based on errors committed by the trial court.

¶ 46      Brigham argues that the trial court committed numerous errors that individually or cumulatively prejudiced Brigham to such an extent that it is entitled to a new trial. Specifically, Brigham argues that the trial court erred by: declining to give Brigham's special interrogatories; preventing Brigham from arguing that Garest was a trespasser; allowing the Will County letter regarding the lighting requirements to be introduced into evidence; allowing testimony and a jury instruction that Garest's wrist injury was permanent; and providing improper jury instructions. Also, Brigham argues that the jury's verdict was against the manifest weight of the evidence.

¶ 47      A few of Brigham's arguments regarding its entitlement to a new trial are predicated on premises liability theories and the duty of care as an owner or occupier of land. Brigham argues that it is entitled to a new trial because the trial court erred in declining to give its special interrogatories. As the trial court noted in its May 23, 2012 order denying the defendants' posttrial motions, the special interrogatories in question were based on premises liability theories. Additionally, Brigham also argues that it is entitled to a new trial because the trial court erred in instructing Brigham that it could not argue that Garest was a trespasser. Garest's status as a trespasser would only be relevant if Brigham was considered to be an owner or

- 14 -

occupier. As previously discussed, we find that Brigham cannot be considered an owner or occupier of the Booth building under these facts, and cannot be held to the same standards as an owner or occupier. Therefore, we decline to address Brigham's arguments as to its special interrogatories and Garest's status as a trespasser as it relates to Brigham.

¶ 48 Notwithstanding Brigham's numerous allegations of error by the trial court, a party is not entitled to a perfect trial, only to a fair trial free of substantial prejudice. *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 47 (2010). "A new trial is necessary when the cumulative effect of trial errors so deprives a party of a fair trial that the verdict might have been affected." *Id*. As to Brigham's remaining arguments, none of the errors it alleges amount to prejudicial error individually or cumulatively. We find that the trial court's rulings at issue were not made in error. None of Brigham's claims, individually or cumulatively, would have affected the outcome of the trial as it relates to Brigham. Likewise, we find that the jury's verdict as to Brigham was not against the manifest weight of the evidence. Therefore, we hold that Brigham is not entitled to a new trial based on the alleged trial court errors.[2]

¶ 49 Turning to Booth's arguments on appeal, we determine whether the trial court erred in denying Booth's motion for a new trial.

¶ 50 First, Booth argues that the trial court erred in denying his motion for a new trial based on the jury's answers to the special interrogatories. He is not asserting that the giving of the special interrogatories was improper. Rather, Booth argues that the jury's answers to the special interrogatories were fundamentally incorrect. Booth points out that based on the answers to the special interrogatories, the jury decided that Garest was an invitee on Booth's premises and was not a trespasser. Booth contends that as a matter of law, Garest could not have been an invitee on his premises at the time of her accident. He asserts that Garest was not an express invitee because it is undisputed that no express invitation was given to her. Likewise, Booth argues that Garest was not an implied invitee because she did not enter his premises for a reason connected with his business and he received no benefit from her entry. In support of his argument, Booth highlights the following undisputed facts: Garest walked onto his premises in the mistaken belief that she was entering Modell Funeral Home; she had never been to Booth Orthodontics and did not have any relationship with Booth prior to the accident; she was not aware of any invitation to enter Booth's premises and did not see the sign for Booth Orthodontics; and she entered Booth's premises at night and after business hours. He contends that those facts show that Garest could not have been an invitee, and thus she was a trespasser. Booth argues that because Garest was a trespasser and not an invitee as a matter of law, the jury's answers to the special interrogatories show that its verdict was against the manifest weight of the evidence.

¶ 51 Additionally, Booth argues that the instructions given to the jury were improper and prejudicial. Specifically, Booth challenges Illinois Pattern Jury Instructions, Civil, No. 120.06 (2011) (hereinafter, IPI Civil (2011) No. 120.06) because it instructed the jury as to the specific duty that a landowner owes to an invitee on his property. Also, Booth challenges an additional instruction given by the trial court which defined the term "implied invitation." Booth argues that those jury instructions were improper because the evidence adduced at trial shows that the

---

[2]Upon the grant of Brigham's petition for rehearing, this court has modified its opinion based on the effect that our findings as to Booth have on the jury's allocation of fault as to Brigham. Our holding is clarified *infra* at the conclusion of our findings as to Booth.

only possible conclusion was that Garest was not an implied invitee on Booth's premises. Thus, Booth asserts that Garest was a trespasser and the evidence in no way supports the instructions that were given to the jury. Booth contends that the jury instructions were misleading, and the jury was left with an impression that was not supported by the evidence. Accordingly, Booth argues that he was prejudiced by the jury instructions. Based on the trial court's error in tendering improper jury instructions, and the jury's answers to the special interrogatories, Booth argues that he is entitled to a new trial.

¶ 52    In response, Garest argues that the jury instructions were not improper because there was *some evidence* to support the jury's finding that she was an invitee on Booth's premises. She asserts that even where there is only slight evidence to support a theory, the jury can be properly instructed on the theory. Garest claims that there was a factual dispute as to her status on Booth's premises, and the court correctly submitted the issue to the jury for resolution. Specifically, Garest points out the following facts: she parked in the parking lot which was shared by the Booth building and Modell Funeral Home; there were no signs restricting patrons of either business from parking anywhere in the shared lot; Booth was aware that his customers parked in the common parking lot on occasion; Garest accessed the sidewalk of the Booth building because she was attracted by the sidewalk light; and Booth kept the building's outside lights turned on because he wanted the building to be seen. Garest contends that those facts support the inference that she was an implied invitee on Booth's premises. Further, Garest asserts that the jury's answers to the special interrogatories were consistent with its verdict and demonstrate that the verdict was not the product of any confusion. Therefore, Garest argues that the jury instructions were not improper, and the jury's verdict was not against the manifest weight of the evidence.

¶ 53    When the trial court rules on a motion for a new trial, the court weighs the evidence and determines if the jury verdict is against the manifest weight of the evidence. *Lawlor v. North America Corp. of Illinois*, 2012 IL 112530, ¶ 38. "A verdict is against the manifest weight of the evidence only where the opposite result is clearly evident or where the jury's findings are unreasonable, arbitrary, and not based upon any of the evidence." *Id*. On review, this court will not reverse the trial court's ruling on a motion for a new trial unless the trial court abused its discretion. *Id*. "In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial." *Maple v. Gustafson*, 151 Ill. 2d 445, 455-56 (1992). The plaintiff is entitled to have the jury instructed on any theory supported by the evidence. *Turner v. Williams*, 326 Ill. App. 3d 541, 550 (2001). In order for an instruction to be justified, some evidence in the record must support the theory. *Id*. It is within the trial court's discretion to give or deny a jury instruction, and to determine what issues are raised by the evidence. *Id*. Therefore, we apply the abuse of discretion standard in determining whether the instructions given to the jury were proper, and whether the trial court erred in denying Booth's motion for a new trial.

¶ 54    As previously discussed, a landowner owes a reasonable duty of care to all entrants upon his property regarding the state of the premises. *Benamon*, 294 Ill. App. 3d at 89. However, as to trespassers, no reasonable duty of care is owed except to refrain from willfully and wantonly injuring the trespasser. *Id*. If a landowner knows or reasonably anticipates a trespasser to encounter a place of danger when entering upon his land, the landowner is held to a duty of ordinary care to protect and/or warn the trespasser. *Lee v. Chicago Transit Authority*, 152 Ill.

2d 432, 448-52 (1992). Further, a person may be a business invitee of a landowner if: "(1) the person enters by express or implied invitation; (2) the entry is connected with the owner's business or with an activity conducted by the owner of the land; and (3) the owner receives a benefit." *Sameer v. Butt*, 343 Ill. App. 3d 78, 86 (2003).

¶ 55    Booth argues that the jury's answers to the special interrogatories, as well as the jury instructions, were improper because as a matter of law Garest could not have been an invitee on Booth's premises at the time of her accident. We agree. It is undisputed that Garest received no express invitation to enter Booth's premises on the night of her accident. Accordingly, she could only have been an invitee if she was an implied invitee. In order to be an implied invitee, Garest would have had to enter Booth's premises for a reason that is connected with Booth's business, and Booth would have had to receive a benefit from her entry. The evidence at trial shows that neither of those requirements were met. In this case, Garest walked onto Booth's premises at night after business hours when Booth Orthodontics was closed. She had never been to Booth Orthodontics and was not a patient of Booth's. In fact, she knew nothing about the Booth building and did not see the sign for Booth Orthodontics. Rather, she mistakenly thought that the Booth building was Modell Funeral Home, and she attempted to enter Booth's premises to attend a wake. Garest's presence on Booth's premises had absolutely no connection with Booth's business or any activity that Booth conducts at the Booth building. Moreover, Booth did not receive any benefit from Garest's presence on his premises. She was not a current customer, and did not learn of Booth's business until after her accident. Therefore, it is clear that the undisputed facts at trial show that Garest's presence on Booth's premises failed to establish the two requirements of an implied invitation. Accordingly, as a matter of law, Garest *could not* have been an invitee on Booth's premises at the time of her accident. However, in answering the special interrogatories, the jury decided that Garest *was* an invitee on Booth's premises and *was not* a trespasser.

¶ 56    Because Garest was not an invitee as a matter of law, the jury's answers to the special interrogatories, as well as the jury instructions, were improper. Based on the answers to the special interrogatories, the jury clearly found that Garest was an invitee on Booth's premises, and that she was not a trespasser. As previously discussed, those findings were factually and legally erroneous. It follows that the jury's verdict was based on those erroneous findings. Likewise, the jury instructions were improper. The trial court submitted IPI Civil (2011) No. 120.06, which read as follows:

> "Under Count II, it was the duty of defendant, Barry E. Booth as an owner of the property in question, to exercise ordinary care to see that the property was reasonably safe for the use of those lawfully on the property. That duty extends only to the portion of the premises onto which the person has either expressly or impliedly been invited to use or to that portion the owner might reasonably expect her to use in connection with the invitation and only to that manner of use which the owner might reasonably expect in connection with the express or implied invitation.
>
> However, if Sandra Garest, was on a portion of the premises to which she was not expressly or impliedly invited or which the owner would not reasonably expect her to use in connection with the invitation or for which the owner might reasonably have expected her to use the premises, then it was the duty of the defendant to refrain from willful and wanton conduct which would endanger the safety of the plaintiff."

Additionally, the trial court provided the jury with the following definition of "implied invitation":

"When I use the expression 'implied invitation' in these instructions, I mean a situation where a person's entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land and there is a mutuality of benefit or benefit to the owner. The status of an invitee does not depend on whether the invited person is to gain an advantage or benefit from her entry. It is sufficient that she go on the land in furtherance of the owner's business or an activity he conducts or permits on the premises."

Both of those instructions misled and confused the jury and caused the jury to focus on allegations that were not supported by the evidence. It is important to note that Garest's only allegations against Booth at trial were negligence to a *foreseeable trespasser* and willful and wanton conduct. Garest's fourth amended complaint did not allege that she was an invitee on Booth's premises. Nevertheless, the trial court instructed the jury on the theory of implied invitation.

¶ 57   The effect of the jury's answers to the special interrogatories and improper jury instructions was significant. As a result of the special interrogatories and jury instructions, the jury was never able to reach the issues of whether Garest was a foreseeable trespasser or whether Booth's conduct was willful and wanton. The jury's verdict was ultimately based on its finding that Garest was an invitee on Booth's premises and not a trespasser. The special interrogatories and jury instructions clearly affected the outcome of the trial, and were substantially prejudicial to Booth because the jury's verdict was based on an improper theory. Thus, Booth was denied a fair trial. Accordingly, we hold that the trial court abused its discretion in submitting the implied invitation instructions to the jury. Likewise, we hold that the trial court abused its discretion in denying Booth's motion for a new trial.

¶ 58   We note that the parties present arguments based on whether the trial court erred by denying Booth's motion for a directed verdict. Specifically, the parties dispute whether, as a matter of law, Garest was a foreseeable trespasser and whether Booth's conduct was willful and wanton. We find that those issues raise questions of material fact that should be determined by a jury. In light of our holding that Booth is entitled to a new trial, we decline to address those issues.

¶ 59   Upon the grant of Brigham's petition for rehearing, we modify our opinion. On rehearing, Brigham argued that this court's reversal of the judgment against Booth and remand for new trial as to Booth had an inseparable effect on Brigham's rights and liabilities. Thus, Brigham argues that it is also entitled to a new trial on all issues. We agree with Brigham's argument that a new trial for Booth has an effect on Brigham. However, we do not agree with the relief Brigham seeks.

¶ 60   Notably, Brigham argues that it is entitled to a new trial on all issues, along with Booth, because the jury's allocation of fault among the parties is inseparably intertwined. As previously discussed, when the jury returned its verdict, it allocated 64% of the fault to Brigham, 34% of the fault to Booth, and 2% of the fault to Garest. The jury's findings of fault were based partially on the improper jury instructions regarding Garest's status as an implied invitee. Brigham contends in its petition for rehearing that in Booth's new trial, the properly instructed jury will have the opportunity to reapportion the fault between Booth and Garest. However, if Brigham is not able to participate in the new trial, then the new jury will be unable

to allocate the fault among *all* the parties. Thus, Brigham argues that it is entirely possible or even likely that in the new trial, the jury will attribute more fault to Garest which would lower the amount of damages that Brigham and Booth would have to pay. Accordingly, Brigham argues that because this court reversed the judgment against Booth and remanded the matter for a new trial as to Booth on all issues, we must also remand for a new trial as to Brigham on all issues so that a jury can reapportion the amount of fault among all three parties after being properly instructed.

¶ 61    We agree with Brigham's argument as to the allocation of fault among the parties. However, as previously discussed, we find that the issue of liability as to Brigham was properly decided by the original jury. In this case, the jury evaluated Brigham's liability under the principles of ordinary negligence. The jury evaluated Booth's liability under the owner/occupier standard. These are separate and distinct legal theories. As such, the jury's determination as to Brigham's liability was not affected by the improper jury instructions as to Booth. However, we cannot come to the same conclusion as to the allocation of fault among the parties. It is impossible to know how the improper jury instructions as to Booth affected the jury's allocation of fault among all the parties. Therefore, the new jury in the new trial should be permitted to allocate the fault among all of the parties (Garest, Booth and Brigham) after being given proper jury instructions.

¶ 62    It is well settled in Illinois that this court has the authority to order partial new trials on certain issues:

> "As previously noted, plaintiffs seek a new trial on both liability and damages, while defendants seek a new trial on liability only. Supreme Court Rule 366(a)(5) grants reviewing courts the power to order partial new trials. [Citation.] However, a reviewing court should limit the issues to be addressed on retrial 'only where it is plain that any error that has crept into one element of the verdict did not affect the determination of any other issue.' [Citation.] A limited retrial is appropriate only if the questions of liability and damages are so separate and distinct that such a retrial would not be unfair." *Bulger v. Chicago Transit Authority*, 345 Ill. App. 3d 103, 124 (2003).

See also Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). Pursuant to our authority under Rule 366(a)(5), we find that this case must be remanded for a new trial as to Booth on the issues of liability and apportionment of fault, and Brigham must be permitted to participate in the trial on the issue of apportionment of fault only. We find no basis for vacating the amount of damages that was determined in the original trial. Therefore, on retrial, the trier of fact need only determine the amount of fault attributable to Brigham, Booth, and Garest.

¶ 63    Accordingly, in the interest of fairness and justice, we reverse the judgment of the circuit court of Cook County as to Booth. Further, we vacate the portion of the circuit court's judgment which allocated fault among the parties. We affirm the remainder of the circuit court's judgment as to Brigham. We remand the matter for a new trial as to Booth on the issues of liability and apportionment of fault, and a partial new trial as to Brigham on the issue of apportionment of fault only. Since we have no basis for vacating the damages awarded in the first trial, the circuit court is instructed that the trier of fact is only to determine the *allocation of fault* among the parties.

¶ 64    Affirmed in part, reversed in part, and vacated in part; cause remanded with directions.